Second Appeal to be argued this morning is Appeal No. 22-1744, Universal Life Church Monastery Storehouse v. American Marriage Ministries. Mr. Matesky, whenever you're ready. Am I pronouncing that right? It's Matesky. Matesky, okay. Good morning, Your Honors. May it please the Court, Mike Matesky on behalf of Universal Life Church Monastery Storehouse, which I will refer to as ULC Monastery. I will refer to the appellee as AMM. Your Honors, I'm happy to launch into my argument, but if there are particular issues the panel would like me to address up front, I'm happy to do so. So I guess you've conceded that you don't deserve a registration for Class 45, right? ULC Monastery is not appealing the Board's decision with regard to Class 45. So just in terms of logistics, how would it work if you were to prevail on Class 35? What would happen to the application? Would you file a motion to, I don't know, delete Class 45, or does the agency do that, or do you have to refile? I just don't know. Your Honor, I have not thought through the procedural implications of how that would go about. There can be a motion to divide. The Board itself could render a decision cancelling in part, or sorry, not cancelling, but refusing registration in part. With regard to the procedural mechanism, when there is a pending opposition, I can't give a precise answer. Okay. But because you're not appealing 45, you've essentially conceded that it's not, it doesn't function as a mark, or it's descriptive, or something like that. Correct. We're not appealing that issue. And could I ask, you applied for both Class 35 and 45, right? Correct. They contend that they oppose, I think you agree that they initially at least opposed both classes, right? In their original pleading, that is correct. Now what if they had only opposed Class 45? Would you then be entitled to your Class 35 registration, or does the Board have an independent obligation, or at least discretion, to review whether 35 should be granted? Well, under this Court's precedent and the Board's own rules, the Board can only render a decision based on the arguments presented in the trial briefs. So, because the Board did not do that, because the Board rendered a decision based on arguments that were not presented in the trial brief, that is the error of the Board's decision. Well, I understand that argument, but would you go so far as to say that the Board is powerless to exercise any review of, in this instance, your Class 35 application, had there been no opposition from anyone to it? Yes, because of the Board's own manual of procedure and litigants' entitlement to rely on the rules promulgated by the Board and the Board's decisions, which say that it's not going to render a decision. Before you said this Court's precedent and the Trademark Court's rules, is there in fact any precedent from this Court that says the Trademark Court is limited in its scope of what it can do in an opposition proceeding to only the arguments raised by the opposer, and has no ability or authority to go beyond that to find problems with the trademark application? This Court has held that tribunals of the Patent and Trademark Office are subject to the Administrative Procedure Act, and therefore, such tribunals must base their decisions on arguments advanced by the litigants at trial. Well, there's notions of notice and opportunity to respond and fair play and all that, but that's different from what is the scope of authority. If the Trademark Court independently saw a problem and said, ULC, I see a separate problem beyond the ones raised by your opposer, I want you to brief this particular question, would the Trademark Court be without authority to do that? I believe there's two responses to that. First, I think no, because of the Board's own promulgated manual of procedures saying, if it's not raised, then it's waived, and so litigants are entitled to rely on that, because if not, then they're not getting notice and opportunity to respond. But as it relates to this particular case, there was no situation. My question puts that to the side. My question includes the Board going directly to you and raising an independent possible defect, and then asking you to brief it. So the first response was, I believe that is in conflict with the Board's own manual of procedures. I don't see anything in the manual that says the Trademark Court is without authority to identify separate problems and present them to the applicant, for the applicant to then respond to. I think if the Board were to do that, that would, with regard to due process, provide notice and opportunity to respond. That's not what happened in this case, though. Right. OK. So then the answer to my question, then, is you don't know of anything that would actually stop the Board from raising an independent problem for the applicant to brief during an opposition procedure. Oh, it is our position that that is in conflict with the Board's manual of procedure. But even if it were not... What are you citing to for that? 801.01? Yes. OK. Anything else?  That's the only section I'm citing. OK. So that's your interpretation of 801.01. Yes. Correct. OK. And in some of this, you've referenced that we have our own Federal Circuit precedent that's pertinent to this. Yes. I understand you to be relying on, basically, IPR petitions and patent-related matters. Have you cited or found any authority from us that considers what the scope of authority of the Patent and Trademark Office is with respect to oppositions to a trademark registration application? With reference to this particular context, no, I have not. However, the IPR licensing... IPR stands for a different set of words in that case. The IPR licensing case from this Court, which quotes prior Federal Circuit precedent, does say that decisions, excuse me, that board decisions in that case not referring to trademark trial and appeal board, but that tribunals of the Patent and Trademark Office are subject to the APA, and that such decisions must be based on arguments advanced by the parties. And I don't believe there's any reason why that would not apply to the... Notice an opportunity, sure, but the patent statute for triggering an IPR proceeding is different from the statute section for triggering an opposition proceeding. There are certain terms in the IPR statute that make it clear that the proceeding will be confined to the arguments raised and the grounds raised by the petitioner. I don't think I see that same kind of language in the opposition statute for trademark propositions. I don't believe the same language exists in the statute, but... And we're talking, IPRs are post-grant proceedings. Here we're talking about an opposition where the registration hasn't gone out the door yet. It's still technically pending as an application in front of the agency. Yes, but I don't believe that vitiates the board's requirement to give notice and opportunity to respond. That we don't disagree on. And in this case, there was no notice because the argument simply was not made. If there's evidence in the record, can the trademark court construe the evidence in the record as tantamount to making an argument? No, and that's... I would call the court's authority, excuse me, call the court's attention to new authority that was issued after the close of appellate briefing, which I only discovered yesterday, which is Monster Energy versus Chun Hwa Lo. That's opposition number 91225050. Is this a trademark court opinion? This is a trademark, a precedential TTAB opinion, yes. When did it issue? January of this year. Did you file a 28J letter? I did not. I only discovered this case yesterday as I was preparing for argument. In that case, in the original pleading, the opposer alleged that it had a family of marks. It did not argue the family of marks theory at trial, and the board said, well, that argument is waived. Now, in that case, not that the entire likelihood of confusion claim is waived, but that legal theory, that argument is waived because it's not raised in the briefing. Now, in that case, though, the record evidence included 18 registrations owned by the opposer that included the word monster, and so that record evidence may very well have supported a family of marks conclusion, a family of marks argument, but because the argument was not made in the brief, the fact that that evidence is in the record is not sufficient, and the board, in a precedential opinion, interpreting its own rules, waived that argument or deemed it waived. AMN suggests, and we may hear an argument in a moment to it, that you had some sort of obligation to make clear to the board that you thought the evidence and argument with respect to Class 35 and 45 should be seen differently. You filed, I think, a unified application. You could have filed a motion to divide. You could have pointed out on the merits why you thought ordination services are somehow different than online retail services, and they suggest you did none of that, and therefore the board was understanding this dispute at the level at which you raised it. What's wrong with that interpretation? I think there are two problems with that argument. The first is that in our briefing, we explicitly called out in our response trial brief to the board, they're not challenging Class 35 services, therefore they have not met their burden and we're not addressing it. And in their reply, they didn't dispute that. In fact, they confirmed it. They admitted it. In their trial reply brief, they concede, quote, applicants' claimed mark is clearly distinctive in the context of one of its claimed services. That's out of Appendix 2714. And so it's very clear that in response to our explicit calling out that Class 35 isn't at issue here, they didn't say, no, no, actually it is. They said, yeah, we're talking about one set of services here. The second response is that that argument contradicts this court's precedent in In Re Latham. In In Re Latham, this court rejected the argument that, oh, well, you should have addressed this below when the decision below was based on a new argument that had not been raised. Clearly, we're going to have to raise new issues on appeal when the board below makes a decision based on an argument that was not raised below. Let's assume we have to get to the descriptiveness question for Class 35, that somehow they did argue that this mark, Get Ordained, is descriptive of all the applied board services by the applicants. And the board went forward and found, yes, Get Ordained is not only descriptive of ordained ministers, but it's also descriptive of this online retail store for selling clothing, books, whatever, related to religion and marriage. Why isn't it descriptive of online retail services for books, clothing, related to conducting marriages and religion? Well, for the purposes of this court's review, it's because the board below did not cite any record evidence in support of that determination, and therefore it's reversible under due approach, but also because the single factual finding made by the board to support the descriptiveness determination in relation to Class 35 services was not supported by any record evidence. The board at length discusses descriptiveness in relation to ordination services in Class 45, but there's only a single sentence laying a supposed factual predicate for determining that the term Get Ordained is not only descriptive, but highly descriptive of online ordination services, and that is this. What if there was evidence in the record that people testified that Online ordination services also sell lots of religious paraphernalia, like credentials, religious clothing, books and written materials about how to perform religious ceremonies, and other wedding accoutrements. I'm reading out of the background of the opening trial brief, but let's just assume for the moment all of this is true. So we get past your technical procedural argument that they didn't cite evidence, that you feel like they didn't cite it. Just get down to the bottom of this. Why isn't it descriptive? Because as found by the court below, which were not challenging, Get Ordained immediately conveys information regarding the characteristics of the ordination services. Get Ordained, ordination. It does not immediately convey information regarding the online retail source services. You could Get Ordained. The selling of a t-shirt, or a religious book for that matter, Get Ordained does not immediately convey information regarding that. Moreover, this court, under the Michigan versus Environmental Protection Agency case, this court can only uphold... So if the online retail service sold books that had sample wedding efficient scripts, you're saying that Get Ordained isn't descriptive of a retail service that sells a book like that. That's correct, and moreover, it's not highly descriptive. I'm just trying to figure out the descriptiveness law, and what makes something descriptive versus not descriptive. I mean, certainly it feels very closely related, but that, I agree, doesn't necessarily make it descriptive. What starts to make something descriptive versus not descriptive? In this case, Get Ordained is suggestive of the online retail store services. It requires some thought process required in the mind of consumers to relate Get Ordained to the services at issue. Because the services are not enabling to Get Ordained. The services are not getting them ordained, as the terminology that I believe A&M had used. There's a mental leap required. It doesn't have to be a big mental leap. It just does not, quote, immediately describe the characteristic of the services. For your client's website, what kinds of products do they sell, and what are they used for? A wide variety. They, for example, have books on barely religious topics. Let's stick to the ones that are related to an ordained minister. What are those kinds of books or clothing or wedding accoutrements? I think the question of what the relationship is to an ordained minister is key. I'm just trying to find out what's on the online store. Can you tell me? Do you know? I mean, there's a wide variety of products. They have stoles. They have garments that a minister might wear. I mean, there really is a very wide variety of products being sold. I believe that at one point in time, they sold not wine, but bread or other things that might be used in ecclesiastical ceremonies. So there are some goods being sold that might be used by an ordained minister. But the factual finding that the board based its entire decision on related to Class 35 services is that it sold goods that are needed to become ordained or needed once you are become ordained. There's no evidence in the record that supports that. In fact, the evidence shows that you don't need to buy anything from ULC Monastery, and I believe it's maybe the case for AMM as well. You don't need to buy anything to become an ordained minister through the organization that issued it. And so that was, despite many pages of analysis and factual findings supporting the Class 45 decision, that was the only factual finding, as I would characterize it, on which the board based its Class 35 decision. And that factual finding is not supported by the record. Thank you very much, Mr. Eske, for reserving your pleasant time. Thank you. Mr. Hodges? Thank you. May it please the Court. In AMM's view, ULC's appeal simply tries to put form over function. There should be no doubt that everything that the board ultimately issued an opinion on was before the board properly, and all the parties knew it. What I'm trying to understand is your brief, your opening trial brief, doesn't speak to Class 35 at all. Let's just take it for granted that it's devoted exclusively to attacking Class 45. And then the responsive brief from ULC says, well, they didn't attack my Class 35 portion of my application, so I'm not going to be arguing – I have no need to defend that. I'm just going to defend my Class 45 part of my application. And any argument in the notice of opposition as to Class 35 is waived. And then in your reply brief, you completely ignored that proclamation by the other side. And so just sitting here on a cold record reading those three briefs, it looks pretty clear to me that you're not attacking Class 35. What's wrong with that reading? There's a couple things that I would say we disagree with in that reading, Your Honor. First off, I'd start with how it impacts the very first question that the panel asked about what happens next if, for instance, the court were to agree with ULC. And I think we get at the heart of one of the main issues, which is ULC chose to have a multi-class application. ULC chose never to divide that. And there is federal circuit law, which we cited both down below at the board and in our briefing here, mainly in Ray Chamber of Commerce of the U.S., that says, and I quote, a mark need not be merely descriptive of all recited goods or services in an application. A descriptiveness refusal is proper if the mark is descriptive of any of the services for which registration is sought. That's a class-by-class kind of analysis. That's not for across multi-classes that, you know, if something is descriptive of one item in a given class, that necessarily means that the descriptiveness finding applies to all the classes applied for. Respectfully, when you read the cases that both that case directly and then the 188 mattress case and the Enroy-Stereo, Texas case, none of those cases make a distinction by class-by-class. They all talk about as an application as a whole. Were those multi-class applications? I was about to say, I will grant you that none of those were multi-class applications, but none of them make the distinction. Let's put that to the side for now. Why is my reading of the briefing below wrong as to a painfully obvious conclusion that there was a waiver by your side as to Class 35? We acknowledge the fact that we did not specifically call out Class 35 oftentimes in the briefing. We did often call out goods or services repeatedly. We didn't use a magic phrase of Class 35 and Class 45. But when we say goods and services, if you look at the two things that are claimed, the only possible goods are in Class 35. And, for instance, if you look at Appendix 2508, which is an argument section in our opening brief about descriptiveness and about how all these other online ordination services also use the phrase get ordained across their variety of services, not just the directly ordaining, but they all have stores as well. That section, I think specifically on that page, if I hopefully highlighted this correctly, calls back out and incorporates by reference our factual section, specifically Appendix 2488, which is Section 3F2. Do you have any cases that would address kind of the multi-class application and say that basically these classes would rise and fall together, which I think is kind of the argument you're making? Yeah, in regards to that first argument, no, we do not. I think it's one of the things that people generally don't do a multi-class application in this sort of context, possibly for this exact reason and ambiguity that it's kind of unclear what happens if you have a multi-class application. Why did you decide to use words? You basically said that you called out Class 45 by the number, but when you returned for Class 35, you're basically saying you substituted in words. Why did you kind of treat them differently in that way? Sorry, Your Honor, I was coughing in the middle of that. Could you repeat that? Yeah. You said, or at least the argument I heard you making here was that with respect to Class 35, you used words as opposed to saying Class 35, but when you were talking about Class 45, you would actually say Class 45. Why would you treat them differently? I think there are times we specifically called out Class 45, and then there are other times that we just generically say goods and services. Sitting here today, can I remember why we chose to do that? I'd love to tell you that I have a definite answer of what the strategy was. I honestly can't remember why we chose to write with specific words in our brief at that time, but I think that when we reference goods and services, not only just looking at the two classes involved, should that have been understood to be attacking everything, but as this Court has acknowledged, as ULC acknowledged, our opposition itself did notify ULC that we were opposing both Class 35 and 45. So when we generically reference goods and services, that should be done in reference to what proceedings we had started. It's fair to say that your reply brief did not address ULC's argument that your challenge to Class 35 is waived. That's fair to say, right? We did not specifically address it. We did generically address it. And it's probably also fair to say that the Board decision doesn't address this one argument by ULC that your side, AMM, has waived a challenge to Class 35. I would say by implication it does address it because ULC acknowledges the fact that it did put into its trial brief the argument that this should be waived. And the Court ultimately, or the Board ultimately, issued an opinion on it. Another fair reading is that they just blew right past it. They ignored it. They didn't see it. They forgot about it because they didn't say anything about it. We have no way of knowing, and we have no analysis to review, as to why the Board may have secretly thought that there was no waiver. Is that fair to say? I believe that it's fair to say, Your Honor. There's clearly not an explicit section in the Board's ultimate opinion that deals with that. That they only, as I said, as I argue, you could say by implication, they saw the argument, they decided it was not waived, so ultimately they issued an opinion on both Class 35 and Class 45. If we were to reach that, putting aside the waiver, what do you think the Board has actually told us about Class 35? And is there evidence to support what they say about Class 35? Yes, I believe the Board ultimately said, you'll see you cannot have a trademark on get ordained for both of these classes, in part because it's descriptive and in part because too many other people are using it. But do they tell us that they're making that finding about Class 35? I recognize that in the end they say no Class 35, but how do we discern what their reasoning was specific to Class 35? Where do we see that in the Board's opinion? I apologize, Your Honor, I don't have the specific site for this, but I believe they have a section where they say it fails to function as a mark because there are so many other people using this. But on descriptiveness, the Board says that they find this mark get ordained descriptive, not only for ordained ministers but also for online retail services because the kinds of things that are sold or that are listed in Class 35 include products that one would use to get ordained, and then in addition also sells products that one would use once you've been ordained. And I'm trying to – first of all, they don't give any analysis or facts for why those two things are true. But even assuming that they are true, why does that necessarily make it descriptive, make get ordained descriptive for selling those kinds of goods or a retail service for selling those kinds of goods? I think it's the interrelated nature of both the application with the multi-class application, which also just reflects the reality of how these ULC operates, A&M operates, all these other third parties operate, which was very much in the record. And I believe that was, for instance, in our facts section of 2488, which I earlier said that we'd incorporated into our argument section as well. And respectfully, I disagree with counsel in that the Board did not hold that these were required or necessary for a minister once they were ordained. They're just related to the minister's job once – Related, but related is not the test for descriptiveness. I'm trying to figure out what is the technical way to think through a descriptiveness inquiry and why the relatedness here is enough to count as the mark being descriptive of an online retail service for clothing and books. I think it's because when it is being used in one way, it's also simultaneously being used in the same way. It's being used in the same metadata, on the same website, in the same header for whether or not every page that it appears, both directly on the ordination page and then on its linked page that is also with the goods. Let me try a different thing. Let me try a hypothetical. Let's assume the mark is learn yoga. And it's for yoga studio where there's some yoga master that teaches yoga classes. And you're not going to get that mark, learn yoga, for teaching people yoga. For that service. But what if there's a second service and it's a store service for selling yoga mats, yoga gear. Is the mark learn yoga descriptive of that store service for selling yoga gear and yoga mats? I would have to say I would like to see, not to be difficult about the hypothetical, but I think a lot depends on how it's actually used. Is it used in a way that links these two things together? Is it, and I get this goes back to one of the problems that the board faced and that we all faced. Is learn yoga describing some feature or characteristic of a store service selling yoga mats and yoga gear? I think it is if you're using it to learn yoga. It is still all that gear is related to learning yoga. But I also think, again, this is highly dependent upon the way that ULC chose to make its own application. We're talking about a potential factual finding or trial that didn't actually happen in this case because it's not the way that the application was put in. It wasn't put in as two separate applications that are unrelated to each other. It was put in as a multi-class application. I would also point the court back to the underlying opinion and the underlying result, which was that it failed to function as a mark not just for descriptiveness issues, but because so many third parties were using the mark in the exact same way that how could this act as a source identifier for anyone, for ULC? That particular argument wasn't raised in your opening brief, right? Your opening brief on failure to function as a mark was solely devoted to the idea that the applicant was using the term get ordained in combination with the actual name of the company United Universal Life Church. And there wasn't this additional argument, which the board ultimately bought off on, which wasn't raised until your reply brief. So I guess I'm wondering why isn't that also a way? Can you raise stuff in your reply brief that you didn't raise in your opening brief? I guess that's the basic question. The very straightforward answer is no. If it were only raised in our reply brief, that would be improper. It gets to the interrelated nature between a descriptiveness, this type of descriptiveness and this type of failure to function as a mark. The fact that multiple third parties were using this identically or in very similar ways in their metadata, in their navigation pages, in headers, was specifically raised in our opening brief. Where? 2508. It is in a descriptiveness section, and it specifically references back to 2488, which is 3F2 of our back section. Wait a second. 2508. Right. This is in your descriptiveness section of your legal argument. Yes. And then on 2508, it's specifically… And then there's a separate section. It doesn't start until 2513. That's your failure to function as a trademark section. Yes. So you embedded part of your failure to function as a trademark argument. You pulled it out of your actual section on failure to function as a trademark and embedded it in your descriptiveness legal argument section? I mean, is that really good enough notice for the tribunal to understand that? I believe it is, Your Honor, and if we go back to, for instance, 801.01, it only requires that an argument be referenced. It doesn't require an exact organization, an exact detail. And, again, I would say that these… So where is it in 2508 that you say, oh, by the way, this also fails to function as a trademark because so many other people are just commonly using this in its common, ordinary meaning? I'm trying to bring it up myself, Your Honor, but it references to our fact section, which is 3F2. Not the very last paragraph, which is just one. So this is inside the paragraph that begins with the topic sentence, given that a measure of a mark's descriptiveness is used by competitors. And then at the bottom it says, see Supra section 3F2. And if you go back and look at section 3F2, which I believe the relevant part is on Appendix 24, it contains a list of multiple third-party sites that all use, get ordained, both for ordination services and for store services. I have one other question for you. So at Appendix 28, which is the Board decision, and there's been allusion to this finding before, I'm struggling to know your view as to what this finding means and, more important, what the evidence is for it. But the Board says that consumers use applicants' ecclesiastical services so they can get ordained, and applicants' online retail store service feature products that consumers need, both to prepare to get ordained and once they get ordained, and then list those services. Shouldn't we read that as a finding of fact by the Board that those services are needed, and really a clearly erroneous finding of fact because there's no evidence cited for it, and I'm not sure you've pointed us to any evidence that would support it. I think in that one section, and I apologize I don't have that up, Your Honor, I think it does use the word need, but I think if you look at the finding as a whole, it relates more to the services and the goods being related. There's another sentence in the Board decision of 831 where in the bottom paragraph, in the middle of it, the Board says, we find applicants' online retail store services featuring products used to prepare for getting ordained and used after getting ordained. So this is something that came up quite frequently, one sentence that talks about these products are absolutely needed, and then there's another sentence by the Board that says these are products that are used. So the Board here is a little equivocal in terms of helping us understand what the Board is thinking on this score. You would have us read needed on 28 as not meaning needed. I would have you read that particular section. I think you have to read it in that section. They said needed. I don't want to equivocate that out, but I think the overall holding is not necessarily based upon needed. It's based upon the related nature of these and that they are used. I think we can debate whether or not needed in somebody's mind. They're clearly not legally needed, but whether or not a minister then thinks they need them might be a second question. Mr. Hodges, thanks very much. Thank you, Your Honors. We went over with Mr. Hodges, so we'll give Mr. Petesky five minutes if he needs it. Thank you, Your Honor. I wanted to address a couple points. First, with regard to the class-by-class distinction, Your Honor is correct, and this is the argument that was explicitly made in the opening trial brief by AMN. If any of the services in Class 45 are found to be not distinctive, then all the services in Class 45, then the board must reject registration for all services in Class 45. That's the explicit argument made by AMN in their opening brief, and that is the law. Are you aware of any multi-class cases? Not in regards to waiver. There's no Federal Circuit opinion that's ever opined on whether a given good listed in one class being descriptive makes an entire multi-class application descriptive. I'm not aware of any, and I think more to the point, this is a new argument being raised on appeal. This was not argued down below. The TTAB, however, does have precedent for at least multiple trademark board decisions that do say that descriptiveness has to be examined on a class-by-class basis. Well, it is black-letter law that it has to be examined with regard to the particular goods and services at issue. I believe the board manual and board precedent says yes, and we don't dispute that if a mark or a purported mark is descriptive in regard to a good or service within a particular class, that that entire class may be rejected, and we don't dispute that. But this is a new argument being raised on appeal for the first time that, oh, actually, the entire multi-class application must be rejected. That argument was not made below. How do you respond to opposing counsel's argument that it was using words to describe Class 35, but the mistake of Class 45 would use the number? I think that's mistaken, and I don't think that's a reasonable reading of the briefing. Mr. Hodges has argued, and in the briefing it's argued that, well, when you refer to goods and services, that may be referring to the services in Class 35. But there's only services in Class 35. There's no goods. ULC Monastery was not applying to register Get Ordained on a coffee mug or on the hang tag for a shirt. There's only services at issue here. I think an oblique reference to goods and services is simply not sufficient to raise the argument specifically in relation to Class 35 online retail store services. Moreover, I would reference Appendix 2508, which AMN has cited saying, oh, well, in this section, we referred back to a prior section where we discussed third-party use of the term Get Ordained, but in the particular sentence they're citing to, they're specifically referring to ordination services. The sentence is, the evidence of record demonstrates that competitors routinely and extensively use, quote, Get Ordained, end quote, in conjunction with their own ordination services. And then they cite back to the prior facts section. So even there, it's specifically referring to ordination services, not supposed third-party use of Get Ordained in relation to online retail store services in Class 35. Class 35 does include goods as well as services, but you're saying your application only went to services? Class 35, respectfully, Your Honor, only includes the service of online retail store services, featuring whereby through which certain goods are sold. But it is an application for service. But it was an application for the service of selling goods, correct? Correct. That is correct, yes. Oh, and I simply wanted to address, because I don't believe I had time to do it earlier, the acquired distinctiveness argument. Acquired distinctiveness can only be judged on a sliding scale depending on whether the mark in question is highly descriptive, weakly descriptive, or somewhere in the middle. More evidence of acquired distinctiveness is needed. We have your argument on highly descriptiveness. Okay. What about if you were to prevail in the opposition, because the trademark court concluded that, yeah, Class 35 is great, you know, we would have remanded it, and they've made that kind of conclusion. Is there anything stopping the examining attorney from taking a second look at descriptiveness for Class 35? I believe so. This application was allowed by the examiner, so the examiner would not have an opportunity to go back and re-examine it. The director of the agency doesn't have any power to take a last look at this before it goes out the door? Not after a final judgment in the opposition. I don't believe so. I believe there would be a final judgment. You don't know of any authority one way or another inside the agency? Specifically on that point, I do not, Your Honor. Okay. Thanks very much. Thank you.